Stanley S. Walters and Ruth Walters v. Commissioner.
Walters v. Commissioner
Docket No. 3185-67.
United States Tax Court
T.C. Memo 1969-5; 1969 Tax Ct. Memo LEXIS 290; 28 T.C.M. (CCH) 22; T.C.M. (RIA) 69005; January 8, 1969, Filed Stanley S. Walters, pro se, 9512 Midwood Rd., Silver Spring, Md. Louis F. Nicharot, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: [1] Respondent determined the following income tax deficiencies against the petitioners: Year
Deficiency
1961
$704.96
1962
717.23
1963
667.99
*291 The issues for decision are: (1) Whether petitioner Stanley S. Walters is entitled to deduct certain transportation expenses under section 212(1), [2] Internal Revenue Code of 1954, to view the stock ticker tape in a brokerage house; (2) whether petitioner is entitled to a depreciation deduction under section 167(a) on a room in his personal residence used in connection with his investment activities; and (3) whether he is entitled to claimed stationery, postage and telephone expenses. The uncontested disallowance of entertainment expenses will be given effect in the Rule 50 computation. Findings of Fact Some of the facts have been stipulated and are found accordingly. Stanley S. Walters (herein referred to as petitioner) and Ruth Walters, husband and wife, resided in Silver Spring, Maryland, at the time they filed their petition in this proceeding. For each of the years 1961 through 1963 petitioners filed joint Federal income tax returns with the district director of internal revenue at Baltimore, Maryland. Petitioner, a mathematician, was employed *292 prior to October 1961 by Hughes Aircraft Corporation in Culver City, California. From 23 October 1961 through the end of 1963 petitioner was employed on a full-time basis by Martin Marietta Corporation in Baltimore, Maryland. Petitioner is presently employed as an Operations Analyst with the United States Arms Control and Disarmament Agency in Washington, D.C.
For each of the years in issue the petitioners reported income and expenses attributable to the operation of a wholesale and retail pottery business operated in the basement of their Maryland residence. Petitioner devoted some time to this business, while his wife was engaged in it on a full-time basis. In addition to his salary from his job and income from the pottery business, petitioner reported income from dividends and from the sale of stock, as follows: Year
Net capital gain (loss)
Dividends
1961
$4,261.25
$504.14
1962
1,061.30
1963
(110.22)
1,620.75
With respect to these stock transactions, which were conducted in the name of petitioner, his wife, and his children, petitioner claimed the following expenses as deductions on his Federal income tax returns for the years 1961 through *293 1963: 1961
1962
1963
Auto traveling expense
$812.50
$937.50
$937.50
Auto parking expense
52.00
104.00
104.00
Use of room of residence for investment activity
450.00
285.00
325.00
Financial publications and periodicals
100.00
150.00
150.00
Stationery
100.00
100.00
100.00
Postage
52.00
52.00
52.00
Safe deposit box
15.00
7.50
7.50
Telephone 75.00
75.00
75.00
Totals
$1,656.50
$1,711.00
$1,751.00
The respondent allowed these expenses to the extent of $190 for 1961, $232.50 for 1962, and $284.50 for 1963. These amounts represented the expenses claimed for financial publications and periodicals, the safe deposit box expense, and a partial allowance for stationery and postage expenses claimed. Since 1958, petitioner has invested in stocks in order to derive a profit through capital gains and, to a lesser extent, through dividends. He is not a "day trader." He usually holds stocks for a number of years. During the years in issue he entered into the following number of transactions: Year
Purchases
Sales
1961
23
4
1962
16
1963
12 Petitioner, a student of the stock market, devoted about 30 hours *294 each week to investment activities. He reads financial journals and consults with his stock broker. He claims that the information upon which he principally relies in managing his portfolio of stocks, however, is gleaned through his close daily observation of the Dow Jones "broad tape." By watching the movement of particular stocks reflected on the ticker tape, petitioner also claims he acquires a "feel" for the strengths and weaknesses of various stocks. During the years in issue he took one and one-half hour lunch breaks from his regular jobs in order to drive to brokerage houses in nearby cities for this purpose. At such times petitioner did not consult with his broker nor did he purchase or sell stocks. In calculating his "auto traveling expense" for the first 9 months of 1961, petitioner used an average cost of 12 1/2 cents per mile for the estimated round trip distance of 26 miles driven in his own automobile between his regular place of employment in Culver City, California, and his stockbroker's office in Santa Monica. For the remainder of 1961 and for the years 1962 and 1963, the deductions were based upon an estimated 30-mile round trip distance between petitioner's office *295 at Friendship Airport and his stockbroker's office in Baltimore, Maryland, and an average cost of 12 1/2 cents per mile. The claimed deduction for each year was based upon 5 trips per week for 50 weeks. Parking expenses were estimated at $1 per week for 1961 and $2 per week for 1962 and 1963. No records were kept to substantiate either the claimed travel or parking expenses. Based upon the claimed use of portions of his residences in conducting his investment activities, petitioner deducted expenses of $450 in 1961, $285 in 1962, and $325 in 1963. In his Maryland residence, petitioner set aside one room and used it as a storage area for his investment papers and as a place where he studied the stock market. Other parts of the house were also used for storing some of his investment data. The house, which was purchased new in 24 1961, is a two-story brick veneer "rambler" with a basement. The petitioners' pottery business was, during the years in issue, located primarily in the basement, to which petitioners allocated for depreciation purposes 30 percent of the total use of the residence. Petitioner has not shown the method used in computing the $450 deduction claimed in 1961 *296 or the $285 deduction claimed in 1962. In the computation for 1963, petitioner allocated 10 percent of the total use of his residence to use in his investment activities. This percentage was multiplied by an estimated $1,000 in general expenses for the house and a total yearly depreciation for it of $2,250 (computed by a 20-year straightline depreciation of the $37,000 cost of the house plus the $8,000 cost of the land). Petitioner's residence in California, occupied from January to October in 1961, was purchased in 1958, at which time it was 5 years old, for $42,000, $8,000 of which was allocable to the cost of the land. Throughout the period in issue, petitioner made frequent telephone calls to his brokers, principally from his office during the business day. There was no proof that petitioner incurred any expense in making such calls. Occasionally he made such calls from his house. Each year petitioner claimed a deduction of $75 whichis equal to approximately one-half the annual cost of his residential phone. No evidence was produced by petitioner to substantiate claimed deductions for each year in issue of $52 for postage expense and $100 for stationery expense. Opinion *297 Plainly, petitioner was not engaged in the trade or business of dealing in stocks. Investing, by itself, does not constitute the on of a trade or business. See Whipple v. Commissioner, 373 U.S. 193 (1963); Higgins v. Commissioner, 312 U.S. 212 (1941). Petitioner was simply an investor interested in capital gains and dividends. Consequently, any deduction allowable with regard to his investment activities must meet the requirements of section 212. [3]
Respondent disallowed as deductions in each of the years in issue a portion of the "expenses resulting from daily security trades" claimed by petitioner on the ground *298 that he failed to establish that the disallowed portion represented "ordinary and necessary expenses" under section 212 or any other section of the Internal Revenue Code. Petitioner contends that all claimed expenses were incurred in his method of market analysis and in the management of his stock portfolio, thus falling within the ambit of section 212. We shall treat separately each category of claimed expenses. 1. Automobile and parking expenses. Respondent acknowledges that during each year the petitioner made trips in his automobile during lunch time from his place of regular employment to brokerage houses in order to observe the "ticker tape." He contends, however, that no deduction is allowable for any claimed expenses of such trips because (1) "petitioners failed to meet their burden of producing evidence from which a proper determination of the number of [trips] and the cost involved in making them can be made" and (2) "petitioners have not established the immediate type of relationship between brokerage house visits to watch a stock ticker tape and petitioner Stanley S. Walters' management of their investment activities that is necessary to secure a deduction under section *299 212, nor have they shown that the visits made were otherwise ordinary and necessary." Petitioner has shown that during the years 1961 through 1963 he devoted a substantial amount of time and effort to investment activities which produced $7,337.22 in capital gains (both short-term and longterm) and dividend income. In managing his stock portfolio, he claims that he relied principally upon information gleaned from his frequent observations of the ticker tape. By this method he asserts that he acquired a "feel" for certain stocks which directly influenced his decisions to buy, sell or hold. We think he has failed to establish on this record that automobile and parking expenses claimed for his trips to his stockbroker's office merely to watch the "ticker tape" bear a reasonable and proximate relation to the production of taxable income or to the management of property held for the production of income. Section 1.212-1(d), Income Tax Regs. Such a wide-ranging 25 activity as regularly viewing the stock "ticker tape" has in no way been shown to be directly related to any particular stock transaction entered into for the production of income. Petitioner's *300 testimony is vague and conclusory. He has not demonstrated how his gazing at the ticker tape for 30 minutes at a time aided him in making stock transactions, other than a rather ephemeral "feel" it gave him for the movement of the market. To a degree petitioner's actions impress us as smacking of personal interest, entertainment or curiosity. Thus, in these circumstances, we conclude that the trips were neither "ordinary" in the sense that they can be treated as normal or customary, nor "necessary" in the sense that they have been shown to be appropriate and helpful to petitioner in the production of income. The linchpin between the transportation expenses and the production of income is missing. In this context we regard such expenditures as too remote or too attenuated to be classified as "ordinary and necessary" expenses within the purview of section 212. We therefore hold that the petitioner has failed to prove that he is entitled to any deductions for nonbusiness transportation expenses in the years 1961 through 1963. 2. Use of room in residence. Respondent contends that no depreciation deduction is allowable as a result of petitioner's use of one room in his personal residence *301 for investment activities since petitioner has failed to establish a proximate relationship between the room, allegedly held for the production of income, and the income produced. In addition, respondent contends that there is insufficient substantiating evidence to determine the correct amount of depreciation. Petitioner claimed depreciation of $450 in 1961, $285 in 1962, and $325 in 1963 for the use of a room in his residence for "investment activity." He failed to prove that any portion of his California residence was used for his investment activities. Even if we do accept his testimony that he used one room "exclusively" in his Maryland residence for his investment activities, that he read several financial publications which he kept on file along with records of his transactions, that he used the room as a place where, without interruption from his children or others, he could read the investment materials and draw the charts and graphs he used as investment guides, we find the proof inadequate. [4] Petitioner did not offer any evidence to show the useful life of his residence or what percentage of it was used in connection with his investment activities. Even the amounts claimed *302 as depreciation in 1962 and 1963 are different and unexplained. In short, petitioner's uncorroborated statements and "estimates" of claimed depreciation are insufficient to support the allowance of any depreciation in these circumstances. [5]
3. Telephone, stationery and postage expenses. Respondent disallowed as deductions all telephone expenses petitioner allegedly incurred in the use of his residential phone for investment purposes and a portion of the claimed stationery and postage expenses. Petitioner has failed to prove that he in fact incurred such expenses in his investment activities in excess of the amounts allowed as deductions or that the use of his home telephone *303 for this purpose was other than on a de minimis basis. Williams v. United States, 245 F. 2d 559 (C.A. 5, 1957). Accordingly, we hold that petitioner is not entitled to deductions based upon such expenses in excess of the amounts allowed by respondent. Decision will be entered under Rule 50. Footnotes
1. This case was heard by Judge C. Rogers Arundell, who died on May 28, 1968. Chief Judge W.M. Drennen issued a notice to the parties on June 5, 1968, advising them that the case would be reassigned unless a request for rehearing or reargument was received on or before July 8, 1968. No such request was received. The case was then reassigned to Judge Howard A. Dawson, Jr.↩, in October 1968.
2. All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
3. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; or↩
4. Petitioner has also failed to prove the amount of any maintenance expenses (heat and electricity) claimed for the use of the room. ↩
5. No question has been raised herein as to whether, in the context of the various statutory provisions relating to nonbusiness expenses, property which is merely used in connection with investment activities can nevertheless qualify under section 167(a)(2) as "property held for the production of income." Consequently, we have not considered the question in this case.↩